UNITED STATES DISTRICT COURT

WESTERN DISTRICT OF LOUISIANA

SHREVEPORT DIVISION

**BRITTANY R BATTSON ET AL**              **CIV. ACTION NO. 5:23-00689**

**VERSUS**                                **JUDGE DAVID C. JOSEPH**

**SYMPHANY MAYS ET AL**                   **MAG. JUDGE KAYLA D. MCCLUSKY**

## REPORT & RECOMMENDATION

Pending before the undersigned Magistrate Judge, on reference from the District Court, is a motion to dismiss for failure to state a claim upon which relief can be granted [doc. #9], filed by Defendants.  The motion is opposed [doc. #11].

For reasons assigned below, it is recommended that the motion to dismiss [doc. #9] be GRANTED.

## Background

On May 23, 2023, Plaintiffs Brittany Rackell Battson, Eric Dewayne Smith, Taurin Dequan Wallace, and Tawanda Michelle Wallace (collectively "Plaintiffs") filed a complaint for damages (the "Complaint") to commence the instant action.  Complaint [doc. #1].  Therein, Plaintiffs assert claims under 42 U.S.C. § 1983 and Louisiana state law against Symphany Mays ("Defendant Mays"), a law enforcement officer for the Shreveport Police Department ("SPD"); J. Johnson ("Defendant Johnson"), a law enforcement officer for the SPD; H. Coleman ("Defendant Coleman"), a law enforcement officer and supervisor for the SPD; A. Lofton ("Defendant Lofton"), a law enforcement officer for the SPD; Jailer Hair ("Defendant Hair"), a law enforcement officer for the SPD (collectively "Defendant Officials"); and the City of Shreveport ("Defendant Municipality") (collectively "Defendants").  Complaint [doc. #1, pp. 1-5, 17].  These claims arise

1

from the June 3, 2022, beating of Bobby Ray Young ("Mr. Young"), which occurred at the Shreveport City Jail ("SCJ"), and led to Mr. Young's death seventeen days later.[1]  *Id.* at p. 6.  Plaintiffs sue the Defendant Officials in their individual and official capacities.[2]  *Id.* at pp. 1-5, 30.

On the morning of June 3, 2022, Mr. Young (age 72) was arrested, booked into the SCJ, and placed in a cell at that facility by an unidentified jailer.  *Id.* at pp. 6, 8.  Later that morning – after Mr. Young had arrived at the SCJ – Shreveport Police Department officers responded to a call concerning Andrew Adaway ("Mr. Adaway"), who had allegedly entered a business "cursing and threaten[ing] to beat" the establishment's employees.  *Id.* at pp. 8-9.  Upon arriving at the business, law enforcement officers requested that Mr. Adaway leave.  *Id.* at p. 9.  Mr. Adaway refused.  *Id.*  The officers then arrested Mr. Adaway for simple assault and remaining after forbidden.[3]  Complaint [doc. #1, p. 9].

Around 12:05 p.m., Mr. Adaway arrived at the SCJ and was placed in a holding cell alone by an unidentified jailer.  *Id.* at pp. 9-10.  Approximately thirty-five minutes later, at 12:40 p.m., Defendant Hair removed Mr. Adaway from the holding cell and directed him to stand in the "booking area" of the SCJ.  *Id.* at p. 10.

At 12:43 p.m., Defendant Mays entered the booking area to relieve Defendant Hair.  *Id.* at pp. 10, 12.  According to Defendant Mays, it was "standard" for an officer being relieved to advise

---

[1] Plaintiffs are Mr. Young's biological children.  *Id.* at pp. 6-8.

[2] Despite filing a lengthy complaint, Plaintiffs never explicitly state in what capacity they are suing the Defendant Officials.  The following paragraph is interpreted to mean that the suit is brought against the Defendant Officials in both their individual and official capacities: "At all times material to this complaint, defendants and other unnamed and/or unknown employees and/or agents of the City of Shreveport were acting in their individual capacities and were acting under the color of state law and statutes, customs, policies, ordinances and usages of the State of Louisiana."  *Id.* at p. 30.

[3] *See* La. Rev. Stat. §§ 14:38, 63.3.

the incoming office of "persons in holding cells." *Id.* at p.12.  Defendant Hair did not advise Defendant Mays that Mr. Young was in a holding cell.[4]  *Id.*

Around 12:52 p.m., Mr. Adaway completed paperwork at a desk in the booking area before returning to the location where he had been standing.  *Id.* at p. 11.  Approximately five minutes later, around 12:57 p.m., Defendant Mays radioed Defendant Johnson to unsecure an intake cell for Mr. Adaway.  *Id.* at pp. 11-12.  The door to Mr. Young's cell was opened, and Defendant Mays ordered Mr. Adaway to enter.  *Id.* at p. 14.  Mr. Adaway refused, stating "I don't want to go in there I belong over there."  *Id.*  Defendant Mays responded, asking "Why?" to which Mr. Adaway replied, "To get right."  *Id.*  Defendant Mays again ordered Mr. Adaway to enter the cell containing Mr. Young.  *Id.*  This time, Mr. Adaway complied.  *Id.*

With Mr. Young and Mr. Adaway together in the cell, Defendant Mays closed and locked the cell door before returning to the booking area.  *Id.* at p. 16.  Within fifteen seconds of entering the cell, Mr. Adaway began beating Mr. Young about the face and head, striking him approximately twelve times.  *Id.*  There was no apparent provocation for the attack.  *Id.*

Hearing the noise of the attack, Defendant Mays turned around and observed Mr. Adaway striking Mr. Young.  *Id.*  Defendant Mays called Defendant Johnson for assistance.  *Id.*  Defendants Johnson, Coleman, and Lofton all reported to the cell and entered.  *Id.*  Upon entering, Defendant Johnson handcuffed Mr. Adaway, removed him, and placed him in an empty cell.  *Id.* at p. 17.  Defendant Johnson then returned to the cell containing Mr. Young.  *Id.*

In the cell, Mr. Young was severely beaten, but remained conscious.  *Id.*  Defendants Coleman, Johnson, Lofton, and Mays observed Mr. Young lying face down with his upper body

---

[4] Defendant Mays stated that either Defendant Hair or "Jailer Glover" booked Mr. Young.  *Id.*

on a bench and his lower body on the floor.  *Id.*  In this position, "it appeared . . . Mr. Young would slide off the bench, thereby causing his head to slam against the concrete floor."  *Id.*

Emergency medical services was summoned.  *Id.* at p. 18.  Mr. Young was "left unsecured" by Defendant Officials.  *Id.*  Prior to medical help arriving, Mr. Young slid off the bench that his upper body lay upon, hitting his face and head on the "hard floor" of the cell.  *Id.*  Defendant Mays observed that Mr. Young had "knots" across his forehead and was bleeding from the same area.  *Id.*  Emergency medical services arrived to find Mr. Young lying on the floor of the cell with "blood on his face and a large hematoma to the right side of his forehead about the size of a baseball."  *Id.* at p.19.

Mr. Young was transported to the hospital, where he died seventeen days later, on June 20, 2022.  *Id.*  An autopsy determined that Mr. Young's cause of death was blunt force closed head injury secondary to an assault.  *Id.*

In their lengthy complaint filed May 23, 2023, Plaintiffs allege that Defendant Officials failed to provide Mr. Young adequate protection from Mr. Adaway and failed to secure and protect Mr. Young after he was beaten.  Complaint [doc. #1, pp. 24-26].  Plaintiffs further allege that the conduct of Defendant Officials was in accordance with customs or practices promulgated by Defendant Municipality.  *Id.* at p. 32.  The Complaint includes claims under 42 U.S.C. § 1983 for violations of Mr. Young's Fourth, Eighth, and Fourteenth Amendment rights, as well as various delictual claims pursuant to Louisiana law. [5]  Complaint [doc. #1, pp. 1, 33-34].  Plaintiffs seek compensatory and punitive damages.  *Id.* at pp. 31-35.

---

[5] Plaintiffs cite LA. CIV. CODE arts. 2315, 2315.1, 2315.2, 2317, and 2320.  Complaint [doc. #1, p. 34].  Plaintiffs assert that their state law claims are also made pursuant to "the Louisiana Constitution of 1974" without citing a specific article or section.  *Id.*

On July 24, 2023, Defendants filed the instant motion to dismiss for failure to state a claim upon which relief can be granted. M/Dismiss [doc. #9]. In a supporting memorandum, Defendants (a) claim qualified immunity, (b) argue that Plaintiffs failed to plead (i) that Defendant Officials had knowledge of a substantial risk faced by Mr. Young or (ii) any policy on which municipal liability can rest, and (c) contend that Plaintiffs' state law claims can be dismissed as duplicative of the federal claims. Memorandum in Support of M/Dismiss [doc. #9-1, pp. 3-9].

On August 14, 2023, Plaintiffs filed a memorandum in opposition to the motion. Memorandum in Opposition to M/Suppress [doc. #11]. Therein, Plaintiffs argue that (a) Defendant Officials had knowledge of the risk facing Mr. Young sufficient to overcome the qualified immunity defense and (b) the pleadings are sufficient to support both municipal liability and the state law claims. *Id.* at pp. 2-18.

Briefing is complete. Accordingly, this matter is ripe.

## <u>Discussion</u>

The undersigned first analyzes Defendants' assertion of federal qualified immunity, finding that all Defendant Officials are entitled to such immunity in their personal capacity. An analysis of Plaintiffs' federal claims against Defendant Municipality and Defendant Officials in their official capacity follows, concluding that the pleadings are insufficient to sustain the claims. Finally, the undersigned determines that respect for comity dictates that Plaintiffs' remaining state law claims should be dismissed without prejudice for adjudication in a Louisiana court.

## I.    Qualified Immunity

In their motion to dismiss, Defendants assert that they are entitled to qualified immunity. Memorandum in Support of M/Dismiss [doc. #9-1, p. 5]. Government officials performing discretionary functions are generally shielded from civil damages by qualified immunity "insofar

as their conduct does not violate clearly established statutory or constitutional rights" which a reasonable person would know of. *Ramirez v. Guadarrama*, 3 F.4th 129, 133 (5th Cir. 2021). Under the doctrine, defendant-officials are given "breathing room to make reasonable but mistaken judgments about open legal questions." *Ashcroft v. al-Kidd*, 563 U.S. 731, 743 (2011). "[A]ll but the plainly incompetent or those who knowingly violate the law" are protected by properly applied qualified immunity. *Id.*

When a § 1983 defendant asserts qualified immunity, the plaintiff facing a related Rule 12(b)(6) motion to dismiss must plead facts sufficient to both state a § 1983 claim and overcome the qualified immunity defense. *Backe v. LeBlanc*, 691 F.3d 645, 648 (5th Cir. 2012) ("[A] plaintiff seeking to overcome qualified immunity must plead specific facts that both allow the court to draw the reasonable inference that the defendant is liable for the harm he has alleged and that defeat a qualified immunity defense with equal specificity."). The facts overcoming qualified immunity must meet the pleading standard promulgated in *Bell Atl. Corp. v. Twombly*, 550 U.S. 544 (2007) and *Ashcroft v. Iqbal*, 556 U.S. 662 (2009).[6] *Arnold v. Williams*, 979 F.3d 262, 267 (5th Cir. 2020).

Qualified immunity is "an immunity from suit, not merely a defense to liability." *Ramirez*, 3 F.4th at 133; *see also Lopez v. Ramirez*, No. 21-40235, 2022 WL 3230442, at *2 (5th Cir. Aug. 10, 2022) (indicating protection from pretrial discovery is "among the chief benefits"

---

[6] This standard requires plaintiffs to plead "sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Iqbal*, 556 U.S. at 678 (quoting *Twombly*, 550 U.S. at 570). Accordingly, "plaintiffs must allege facts that support the elements of the cause of action in order to make out a valid claim." *City of Clinton, Ark. v. Pilgrim's Pride Corp.*, 632 F.3d 148 (5th Cir. 2010). Assessing whether pleadings state a plausible claim for relief is a "context-specific task that requires the reviewing court to draw on its judicial experience and common sense." *Iqbal*, 556 U.S. at 663. Although the court must accept as true all factual allegations set forth in the complaint, the same presumption does not extend to legal conclusions. *Id.*

of qualified immunity).  Accordingly, a defendant's entitlement to this immunity "should be determined at the earliest possible stage of litigation."  *Lopez*, 2022 WL 3230442, at *2.  As a finding of qualified immunity precludes further litigation, the undersigned first analyzes Defendants' entitlement to such immunity.

To overcome a defendant-official's invocation of qualified immunity, a plaintiff must show that the defendant-official's conduct violated clearly established law.  *Brumfield v. Hollins*, 551 F.3d 322, 326 (5th Cir. 2008).  To meet this burden, the plaintiff faces a two-prong test.  The plaintiff must demonstrate that the defendant-official committed a constitutional violation under current law.  *Crostley v. Lamar Cnty.*, 717 F.3d 410, 422 (5th Cir. 2013).  The plaintiff must also demonstrate that the defendant-official's actions were objectively unreasonable in light of law that was clearly established at the time of the alleged violation.  *Club Retro, L.L.C. v. Hilton*, 568 F.3d 181, 194 (5th Cir. 2009).  Courts are "permitted to exercise their sound discretion in deciding which of the two prongs of the qualified immunity analysis should be addressed first in light of the circumstances of the particular case at hand."  *Collier v. Montgomery*, 569 F.3d 214, 217 (5th Cir. 2009).

When multiple defendant-officials are sued in their individual capacity, each defendant's conduct must be analyzed separately, even if they acted in union.  *Pratt v. Harris Cnty.*, 822 F.3d 174, 181 (5th Cir. 2016).  Accordingly, the undersigned analyzes whether each Defendant Officer, in his or her individual capacity, is entitled to qualified immunity.  This analysis is focused on the first prong of the qualified immunity test: Whether Plaintiffs sufficiently pleaded that Defendant Officials committed a constitutional violation under current law.[7]

---

[7] As discussed *infra* § I.a, Plaintiffs have failed to plead that Defendant Officials violated the Constitution.  Further analysis under the second prong of the qualified immunity test is, thus, unnecessary.

a.    *Individual Capacity Claims Under the Fourteenth Amendment*

Plaintiffs allege that Defendant Officials violated Mr. Young's Fourteenth Amendment rights by failing "to seek proper screening, monitoring, protection, and custody."  Complaint [doc. #1, p.31].

Pretrial detainees are protected by the Due Process Clause of the Fourteenth Amendment. *Alderson v. Concordia Par. Corr. Facility*, 848 F.3d 415, 419 (5th Cir. 2017).  To support a constitutional violation pursuant to a Fourteenth Amendment failure-to-protect claim, a plaintiff must evidence "subjective deliberate indifference" by the defendant-official.  *Id.*  This requires a demonstration that the defendant-official knew that a prisoner faced a substantial risk of serious harm and disregarded that risk.  *Mosley v. Anderson*, 503 F.App'x 272, 274 (5th Cir. 2012) (citing *Farmer v. Brennan*, 511 U.S. 825, 837 (1994)).  "Actions and decisions by officials that are merely inept, erroneous, ineffective, or negligent do not amount to deliberate indifference and do not divest officials of qualified immunity."  *Alton v. Texas A&M Univ.*, 168 F.3d 196, 201 (5th Cir. 1999).  Rather, the defendant-official must "both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference."  *Farmer*, 511 U.S. at 837.

Prior to analyzing the claims against each Defendant Officer, it is instructive to review cases where defendant-officials were found to be deliberately indifferent.  In *Hatton v. Pharis*, the plaintiff-inmate alleged the following:

> [A] fellow inmate in an adjacent cell was heating water with a stinger and throwing the boiling water on [the plaintiff-inmate].  [The plaintiff-inmate] relayed the complaint to [the defendant-official] who investigated the incident.  [The plaintiff-inmate] testified that [the defendant-official] saw the burns on his body and the water in his cell but walked away without taking any action. After [the defendant-official] left, the inmate continued to throw hot water on [the plaintiff-inmate].

381 App'x 445, 446 (5th Cir. 2010). The Fifth Circuit found this evidence sufficient to support a finding that the defendant-official acted with deliberate indifference towards the risk posed by the fellow inmate to the plaintiff-inmate. *Id.* at 446.

Presenting a more complex fact pattern, *Horton v. Cockrell*, involved a series of events arising from one inmate's attempt to extort protection money from another. 70 F.3d 397 (5th Cir. 1995). Initially, another inmate approached the plaintiff-inmate threatening to assault him if he did not pay "extortion money." *Id.* at 399. The next day, the plaintiff-inmate reported the incident to a law enforcement official whose only action was to suggest the plaintiff-inmate contact his correctional counselor. *Id.* Later that day, the plaintiff-inmate and the second inmate got into a fist fight. *Id.* The plaintiff-inmate then filed a formal grievance, the warden refused relief, the plaintiff-inmate appealed, the warden denied the appeal, and the plaintiff-inmate filed another formal grievance. *Id.* The second inmate subsequently got into a fight with a third inmate, after which the plaintiff-inmate filed yet another formal grievance. *Id.* Later, the second inmate and the plaintiff-inmate got into another fight. *Id.* These events took place over a two-week period. *Id.* at 401. On this record, the Fifth Circuit found that the defendant-officials were deliberately indifferent to a risk of serious harm presented by the second inmate to the plaintiff-inmate. *Id.*

The other face of the coin are cases in the vein of *Mosley v. Anderson*, where the Fifth Circuit found pleadings insufficient to establish deliberate indifference. 503 F.App'x at 273. In *Mosley*, the plaintiff-inmate argued that defendant-officials showed deliberate indifference by moving him from protective segregation into a cell with another inmate that the defendant-officials allegedly knew would attack him. *Id.* The Fifth Circuit found these allegations, unsupported by additional particularized facts, did not demonstrate that the other inmate

presented a risk of serious harm to plaintiff-inmate nor that the defendant-officials deliberately exposed plaintiff-inmate to such a risk.  *Id.* at 274.

i.    Defendant Mays

Plaintiffs argue that Defendant Mays failed to "seek proper screening, monitoring, protection, and custody" of Mr. Young, thereby violating his Fourteenth Amendment rights. Complaint [doc. #1, p.31].  Based upon the allegations in the Complaint, this failure could have arisen at two points in the alleged events: First, when Mr. Adaway was placed into the same cell as Mr. Young, and, second, when Mr. Young was lying on the ground after being beaten.

The factual allegations contained in the Complaint fail to show that Defendant Mays exhibited deliberate indifference to the risk Mr. Adaway posed to Mr. Young.  There are no allegations that Defendant Mays had knowledge of the circumstances of Mr. Adaway's arrest. Nor are there allegations that Defendant Mays had knowledge of any history of violence that Mr. Adaway may have had.  While Plaintiffs do allege that Defendant Mays knew or should have known that Mr. Adaway was arrested for Simple Assault, this fact alone is insufficient to draw the inference that Mr. Adaway presented a serious risk of substantial harm to other detainees. Furthermore, there are no allegations that Mr. Adaway's conduct while in custody would provide Defendant Mays with sufficient information to infer that he posed a substantial risk to Mr. Young.  Unlike in *Hatton* and *Horton*, Mr. Adaway had not previously attacked Mr. Young, nor had Mr. Young complained of any risk posed by Mr. Adaway.  And as in *Mosley*, Plaintiffs have failed to allege facts indicating that Defendant Mays knew Mr. Adaway would attack Mr. Young.  Rather, Plaintiffs allege that Defendant Mays summoned assistance at the first indication that Mr. Adaway posed a risk to Mr. Young.  Complaint [doc. #1, p. 16].  This is to

say that, at the first indication that Mr. Young faced a substantial risk of harm, Defendant Mays took action to alleviate that risk.

Plaintiffs' allegations are similarly unavailing concerning Defendant Mays' potential deliberate indifference to any risk Mr. Young may have faced while lying on the ground after he was beaten. There are no allegations in the Complaint that Defendant Mays (or any of the Defendant Officials) had information sufficient to know that Mr. Young should be secured to prevent future harm. While after the fact it is easy to think that Defendant Mays and the other Defendant Officials should have somehow secured Mr. Young, such a failure to act would at worst be negligent, not deliberately indifferent. For instance, there are no allegations that Defendant Mays had medical training sufficient to create knowledge that Mr. Young should be stabilized in some way (or, indeed, that opting to leave Mr. Young unmoved was *not* the proper medical course of action). Instead, Plaintiffs, in fact, allege that one of the Defendant Officials called emergency medical services immediately after the beating. *Id.* at p. 18. This fact, alleged by Plaintiffs, weighs heavily against a finding of deliberate indifference.

Plaintiffs have failed to plead facts sufficient to show that Defendant Mays exhibited deliberate indifference to a substantial risk of harm facing Mr. Young. Thus, they have failed to establish that Defendant Mays committed a constitutional violation. Accordingly, Defendant Mays, in her individual capacity, is entitled to qualified immunity from Plaintiffs' federal constitutional claims.

ii.      Defendant Johnson

Plaintiffs allege that Defendant Johnson committed the same constitutional violations as Defendant Mays. *Id.* at p. 31. Defendant Johnson appears in the factual allegations at two junctures: First, when he unsecured a door to allow Defendant Mays to place Mr. Adaway in the

cell with Mr. Young, and second, when he entered the same cell to remove Mr. Adaway. *Id.* at pp. 12, 16-17. There are no allegations in the Complaint that Defendant Johnson had knowledge of any potential risk posed by Mr. Adaway to Mr. Young when he initially opened the cell door. As explained *supra* § I.a.i, the pleadings are insufficient to show that Defendant Officials – including Defendant Johnson – exhibited deliberate indifference to Mr. Young's safety after the beating occurred. In fact, Defendant Johnson is alleged to have removed Mr. Adaway from the cell after the attack, conduct which *alleviated* risk to Mr. Young. Complaint [doc. #1, p. 17].

Because Plaintiffs fail to show that Defendant Johnson violated Mr. Young's constitutional rights, Defendant Johnson, in his individual capacity, is entitled to qualified immunity from Plaintiffs' federal constitutional claims.

iii. Defendant Lofton

Plaintiffs allege that Defendant Lofton committed the same constitutional violations as Defendants Mays and Johnson. Complaint [doc. #1, p. 31]. Defendant Lofton's alleged conduct is limited to entering the holding cell after Mr. Young was beaten and observing Mr. Young lying on the ground. As described *supra* § I.a.i, the alleged conduct of Defendant Officials – including Defendant Lofton – as pleaded does not rise to the level of deliberate indifference. Accordingly, Defendant Lofton, in his individual capacity, is entitled to qualified immunity from Plaintiffs' federal constitutional claims.

iv. Defendant Hair

Defendant Hair is alleged to have committed the same constitutional violations as Defendants Mays, Johnson, and Lofton. Complaint [doc. #1, p. 31]. Defendant Hair's alleged conduct is limited to removing Mr. Adaway from his initial holding cell and failing to advise Defendant Mays "of the current status of the booking area" when Defendant Mays replaced

Defendant Hair on a shift change.  *Id.* at pp. 10, 12.  There are no allegations establishing that Defendant Hair had knowledge of any risk posed by Mr. Adaway to Mr. Young, that Defendant Hair was aware that Mr. Adaway had been arrested for assault, or that she had any other reason to know of any continued threat Mr. Adaway posed.  Without such knowledge, it is axiomatic that Defendant Hair did not exhibit deliberate indifference.  Therefore, Defendant Hair, in her individual capacity, is entitled to qualified immunity from Plaintiffs' federal constitutional claims.

v.      Defendant Coleman

Last comes Defendant Coleman, who is alleged to have committed the same constitutional violations as the other Defendant Officials.  *Id.* at p. 31.  Defendant Coleman's involvement is limited to entering the cell after Mr. Adaway assaulted Mr. Young and observing the latter prior to the arrival of emergency medical services.  *Id.* at pp. 16-17.  As established *supra* § I.a.i, the alleged conduct of Defendant Officials – including Defendant Coleman – in the cell after Mr. Young was beaten does not rise to the level of deliberate indifference.

Plaintiffs raise the specter of supervisory liability, alleging that Defendant Coleman "held the title of Supervisor" at the SCJ.  Complaint [doc. #1, p. 17].  This is of no moment as, under § 1983, a defendant-official cannot be held vicariously liable for the conduct of those under their supervision.  *Alderson*, 848 F.3d at 420.  Supervisory defendant-officials *are* accountable for their own acts of deliberate indifference and implementation of unconstitutional policies causing injury to a plaintiff.  *Id.*  Defendant Coleman was not deliberately indifferent, nor – as discussed *infra* § II – are there allegations sufficient to support the existence of an unconstitutional policy. Accordingly, Defendant Coleman, in his individual capacity, is entitled to qualified immunity from Plaintiffs' federal constitutional claims.

b.      *Potential Fourth and Eighth Amendment Claims*

Plaintiffs make passing reference to Defendant Officials violating Mr. Young's Fourth and Eighth Amendment rights.[8]  Plaintiff's claims lack particularity, as they fail to invoke any specific rights associated with either amendment, let alone a violation of such rights.  However, in the interest of fulsome review, the undersigned has analyzed potential claims under these amendments.  Plaintiffs' pleadings fail to adequately allege a cause of action under the Fourth Amendment.  Furthermore, Defendant Officials are entitled to qualified immunity from putative Eighth Amendment claims as currently pleaded.

i.      Fourth Amendment

It is unclear from the pleadings what nature of claim Plaintiffs envisioned when invoking the Fourth Amendment.  The core of that amendment is "[t]he right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures." *Carpenter v. United States*, 138 S. Ct. 2206, 2213 (2018).  This right is meant to safeguard individual privacy and security in constitutionally protected areas.  *Id.*  "[A]s a per se rule a prisoner cannot invoke the Fourth Amendment because society is not prepared to recognize a prisoner's expectation of privacy in his prison cell."  *United States v. Ward*, 561 F.3d 414, 419

---

[8] Plaintiffs' complaint includes the following passage:

> As discussed above, [Mr. Young] was incarcerated at the [SCJ] under dangerous and substandard conditions and operations posing a substantial risk of serious harm; the actions and omissions of the defendants, who were at all times acting under the Color of State Authority in accordance with 42 USC 1983, constituted unlawful and malicious detention and confinement and they acted with intentional and deliberate indifference and callous disregard and were recklessly and/or grossly negligent with regard to the conditions of [Mr. Young's] confinement and said defendants were aware of a specific, impending and substantial threat to the health and safety of [Mr. Young], thus depriving [Mr. Young] of his rights as a detainee under the Fourth, Eighth and Fourteenth Amendments of the Constitution of the United States and 42 United States Code, Sections 1983 and 1988.

Complaint [doc. #1, p. 31].  This is the full extent of Plaintiffs argument concerning claims under the Fourth and Eighth Amendments.

(5th Cir. 2009). Consequently, the protections of the Fourth Amendment were generally unavailable to Mr. Young during his imprisonment.

However, the right to be free from unreasonable seizures also governs excessive-force claims. *Roque v. Harvel*, 993 F.3d 325, 332 (5th Cir. 2021). To prove an excessive-force claim, plaintiffs must plead (1) an injury, (2) which resulted directly and only from the use of force that was clearly excessive, and (3) the excessiveness of which was clearly unreasonable. *Id.*

Here, Plaintiffs have not pleaded that Defendant Officials exercised excessive force, nor have they pleaded facts that could support such claim if it had been brought. In summation, Plaintiffs have failed to plead that Defendant Officials violated the limited protections Mr. Young was owed under the Fourth Amendment during his time at the SCJ. Even a hard look at the Complaint fails to discern a plausible Fourth Amendment claim.

ii.      Eighth Amendment

Prison officials have a duty under the Eighth Amendment to protect inmates from violence at the hands of other prisoners. *Farmer*, 511 U.S. at 832. However, not every injury suffered by one prisoner at the hands of another constitutes a constitutional violation. *Horton*, 70 F.3d at 400. To bring a claim under the Eighth Amendment, a plaintiff-prisoner must prove that (a) he was incarcerated under conditions that posed a substantial risk of serious harm and (b) the defendant-official exhibited deliberate indifference to the plaintiff-prisoner's health or safety. *Id.* at 401. A finding of deliberate indifference requires the defendant-official to have knowledge of an excessive risk to the plaintiff-prisoner. *Farmer*, 511 U.S. at 837 ("[A] prison official cannot be found liable under the Eighth Amendment for denying an inmate humane conditions of confinement unless the official knows of and disregards an excessive risk to inmate health or safety; the official must both be aware of facts from which the inference could be drawn that a

15

substantial risk of serious harm exists, and he must also draw the inference.").  Accordingly, the standard to prove a violation of the Eighth Amendment is remarkably similar to that used in the Fourteenth Amendment context.

As discussed *supra* § I.a, Plaintiffs have not successfully pleaded that Defendant Officials had knowledge of an excessive risk to Mr. Young's health or safety.  As with their Fourteenth Amendment claims, Plaintiffs have failed to allege facts to support a finding of deliberate indifference, thereby also precluding a finding that Mr. Young's Eighth Amendment rights were violated.  Accordingly, Defendant Officials are entitled to qualified immunity from Plaintiffs' putative Eighth Amendment claims.

As Defendant Officials are all entitled to qualified immunity from Plaintiffs' federal constitutional claims, it is RECOMMENDED that all claims under 42 U.S.C. § 1983 against Defendant Officials in their individual capacity be dismissed with prejudice.

## II.    Official Capacity Claims and Municipal Liability

In actions where a defendant-official is sued in both her individual and official capacity, and a municipality is also sued, "there potentially exists an overlapping cause of action" whereby "[t]he official-capacity claims and the claims against the governmental entity essentially merge." *Turner v. Houma Mun. Fire & Police Civ. Serv. Bd.*, 229 F.3d 478, 485 (5th Cir. 2000).  Claims against defendant-officials in their official capacity "generally represent only another way of pleading an action against an entity of which an officer is an agent." *Kentucky v. Graham*, 473 U.S. 159, 165 (1985) (quoting *Monell v. New York City Dept. of Soc. Serv.*, 436 U.S. 658, 690, n.55 (1978)).  As discussed above, Plaintiffs have sued Defendant Officials in both their individual and official capacities.  The official-capacity federal law claims against Defendant

Officials and the federal law claims against Defendant Municipality are overlapping.[9]

Accordingly, those claims merge and will be analyzed under relevant law concerning § 1983

municipal liability.

> First, Plaintiffs have failed to sufficiently alleged a constitutional violation.
>
> Under the Supreme Court's decision in *Monell,* "[m]unicipalities can be held liable for violating a person's constitutional rights under § 1983." *Est. of Bonilla by & through Bonilla v. Orange County*, 982 F.3d 298, 308 (5th Cir. 2020) (citation omitted); *see also Monell v. Dep't of Soc. Servs.*, 436 U.S. 658, 694 (1978). We need not discuss *Monell's* elements let alone whether McNeal established them, however: "without a predicate constitutional violation, there can be no *Monell* liability." *Loftin v. City of Prentiss,* 33 F.4th 774, 783 (5th Cir. 2022) (citing *Garza v. Escobar,* 972 F.3d 721, 734 (5th Cir. 2020)). Because we hold that McNeal has failed to establish any constitutional violation, "the associated *Monell* claims must also fail." *Id.*

*McNeal v. City of Katy*, 23-20054, 2023 WL 7921201, at *4 (5th Cir. Nov. 16, 2023).  Thus,

Plaintiffs' *Monell* claim fails on the basis that they have failed to allege a constitutional violation.

Nonetheless, out of an abundance of caution, and recognizing, as discussed *infra*, that it is

possible that Plaintiffs may amend to cure their constitutional deficiencies, the undersigned will

proceed to further analysis.

"A municipality is almost never liable for an isolated unconstitutional act on the part of

an employee; it is liable only for acts directly attributable to it 'through some official action or

imprimatur.'" *Peterson v. City of Fort Worth*, 588 F.3d 838, 847 (5th Cir. 2009) (quoting

*Piotrowski v. City of Houston*, 237 F.3d 567, 578 (5th Cir. 2001)).  Furthermore, it is "well-

---

[9] In their federal claim against Defendant Municipality, Plaintiffs allege that Defendant Officials were acting "in accordance with a custom or practice" of Defendant Municipality.  Complaint [doc. #1, p. 32].  Furthermore, while Plaintiff's styles its claims against the Defendant Officials and Defendant Municipality as separate, all such claims are predicated upon the same facts and cause of action.  *Id.* at pp. 31-34.  In short, the claims against Defendant Officials in their official capacities are duplicative of the claims against Defendant Municipality.

established" that cities are not liable under § 1983 on a theory of *respondeat superior*. *Peterson*, 588 F.3d at 847. To establish municipal liability under § 1983, a plaintiff must prove that "(1) an official policy (2) promulgated by the municipal policymaker (3) was the moving force behind the violation of a constitutional right." *Id.* at 847.

The official policy requirement can take many forms, including written policy statements, ordinances, regulations, or a widespread practice "so common and well-settled as to constitute a custom that fairly represents municipal policy." *Garza v. City of Donna*, 922 F.3d 626, 637 (5th Cir. 2019). Such a custom may be shown by demonstrating a pattern of unconstitutional conduct by municipal actors or employees, or a single unconstitutional action by a final policymaker. *Zarnow v. City of Wichita Falls, Tex.*, 614 F.3d 161, 169 (5th Cir. 2010). Plaintiffs bear the burden to prove the existence of a policy or custom. *McConney v. City of Houston*, 863 F.2d 1180, 1184 n. 2 (5th Cir. 1989). To proceed beyond the pleading stage, a plaintiff must allege specific facts describing the reputed policy or custom and its relationship to the underlying constitutional violation. *Peña v. City of Rio Grande City*, 879 F.3d 613, 622 (5th Cir. 2018). A description of only the incident giving rising to the plaintiff's injury is insufficient to plead a practice "so persistent and widespread as to practically have the force of law." *Id.*

Here, Plaintiffs offer nothing but conclusory allegations regarding purported policies promulgated by Defendant Municipality. The only references to Defendant Officials acting in accord with a custom or practice are conclusory statements devoid of factual allegations of what exactly such a custom or practice constituted. *See, e.g.,* Complaint [doc. #1, p. 32] ("Plaintiffs further assert that the actions of [the Defendant Officials] and/or other officers and employees of the [Defendant Municipality] were in accordance with a custom or practice of the [Defendant Municipality], in that the [Defendant Municipality] had a custom and practice of violating the

civil rights of inmates at the [SCJ], all being actions in violation of the Fourteenth Amendment . . . .").  When Plaintiffs' pleadings *do* include details, they concern only the events of June 3, 2020.  There are no substantive pleadings concerning a pattern of conduct by the employees of Defendant Municipality, nor are there pleadings that any of the Defendant Officials are final policymakers.

Curiously, Plaintiffs argue that they have sufficiently pleaded *violations* of municipal policies.  *See* Memorandum in Opposition to M/Dismiss [doc. #11, p. 11] ("[P]laintiffs have sufficient [sic] alleged policy violations that rise to the level of plausibility.").  This completely misunderstands the core requirement for municipal liability: A plaintiff must allege that defendant-officials acting in *accordance* with a policy led to a constitutional violation, not that *violating* a policy led to the abrogation of rights.

Plaintiffs also assert that "[t]he discovery process will be the process by which to determine the practice of city officials or employees that constitute a custom that fairly represents the municipal policy."  *Id.* at pp. 11-12.  This argument is faulty on two grounds.  First, while discovery is the process for gathering evidence of the alleged policy or custom, it is not the process for identifying that underlying policy or custom.  The procedural juncture for such identification is the initial pleadings.  *See Peña*, 879 F.3d at 622 ("To proceed beyond the pleading state, a complaint's "description of a policy or custom and its relationship to the underlying constitutional violation . . . cannot be conclusory; it must contain specific facts.").  Second, the argument reads in a certain light as an admission that, in fact, Plaintiff has yet to identify a policy or custom that Defendant Officials acted in accordance with.  It would be improper to subject the Defendants to discovery merely in hopes of turning up a practice upon which to predicate liability; hope alone is insufficient to satisfy the pleading standards.

Plaintiffs have failed to plead facts sufficient to support a finding that Defendant Officials acted in accord with a policy, practice, or custom promulgated by Defendant Municipality. Accordingly, it is RECOMMENDED that the claims under 42 U.S.C. § 1983 against Defendant Municipality and Defendant Officials, in their official capacity, be dismissed with prejudice.

## III.    State Law Claims

When, as recommended here, all claims which confer federal subject matter jurisdiction are dismissed, the court may decline to exercise supplemental jurisdiction over the remaining state law claims.  28 U.S.C. § 1367(c)(3); *Carlsbad Technology, Inc. v. HIF Bio, Inc.*, 556 U.S. 635, 639 (2009) ("A district court's decision whether to exercise [supplemental] jurisdiction after dismissing every claim over which it had original jurisdiction is purely discretionary.").[10]

Comity dictates that the courts of Louisiana are best situated to interpret and apply the laws of that state.  That same interest counsels that the state law claims be dismissed without prejudice.  This is particularly true when, as here, litigation is at an early stage.  The potential hardship imposed by dismissal in this court is ameliorated by Plaintiffs' ability to re-file the matter in state court.

Accordingly, it is RECOMMENDED that Plaintiffs' state law claims be dismissed without prejudice.

---

[10] In determining whether to exercise supplemental jurisdiction, federal courts "should consider and weigh in each case, and at every stage of the litigation, the values of judicial economy, convenience, fairness, and comity."  *Carnegie-Mellon Univ. v. Cohill*, 484 U.S. 343, 350 (1988). "[W]hen the federal-law claims have dropped out of the lawsuit in its early stages and only state-law claims remain, the federal court should decline the exercise of jurisdiction by dismissing the case without prejudice."  *Id.*

## IV.    AMENDMENT

Although the undersigned has recommended dismissal of Plaintiffs' federal claims with prejudice and their state law claims without prejudice, the court is obliged to "freely" grant leave to amend "when justice so requires." Fed. R. Civ. P. 15(a)(2).  Furthermore, "[d]istrict courts often afford plaintiffs at least one opportunity to cure pleading deficiencies before dismissing a case, unless it is clear that the defects are incurable . . ." *Great Plains Trust Co. v. Morgan Stanley Dean Witter & Co.*, 313 F.3d 305, 329 (5th Cir. 2002).  Here, it is conceivable that Plaintiffs can cure one or more aspects of their deficient pleading via amendment.  Accordingly, the instant recommendations of dismissal are subject to Plaintiffs' opportunity to seek leave of court to amend their complaint **with a proposed pleading that cures the deficient allegations – within the deadline to file objections to this report and recommendation.**

### <u>Conclusion</u>

In the interim, and in the absence of a curative amendment, for the foregoing reasons,

**IT IS RECOMMENDED** that the motion to dismiss for failure to state a claim upon which relief can be granted filed by Defendants [doc. #9] be **GRANTED** as follows:

Plaintiffs' claims pursuant to 42 U.S.C. § 1983 should be **DISMISSED WITH PREJUDICE**.  Plaintiff's claims pursuant to Louisiana state law should be **DISMISSED WITHOUT PREJUDICE**.

Under the provisions of 28 U.S.C. § 636(b)(1)(C) and Fed. R. Civ. P. 72(b), the parties have **fourteen (14) days** from service of this Report and Recommendation to file specific, written objections with the Clerk of Court.  A party may respond to another party's objections within **fourteen (14) days** after being served with a copy thereof.  A courtesy copy of any objection or response or request for extension of time shall be furnished to the District Judge at the time of

filing.  Timely objections will be considered by the District Judge before he makes a final ruling.

**A PARTY'S FAILURE TO FILE WRITTEN OBJECTIONS TO THE PROPOSED FINDINGS, CONCLUSIONS AND RECOMMENDATIONS CONTAINED IN THIS REPORT WITHIN FOURTEEN (14) DAYS FROM THE DATE OF ITS SERVICE SHALL BAR AN AGGRIEVED PARTY, EXCEPT ON GROUNDS OF PLAIN ERROR, FROM ATTACKING ON APPEAL THE UNOBJECTED-TO PROPOSED FACTUAL FINDINGS AND LEGAL CONCLUSIONS ACCEPTED BY THE DISTRICT JUDGE.**

In Chambers, at Monroe, Louisiana, on this 20th day of November, 2023.

KAYLA DYE MCCLUSKY
UNITED STATES MAGISTRATE JUDGE